2022 IL App (1st) 210417-U

No. 1-21-0417

Order filed March 23, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| KADIJAH DAVIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 OP 77503 |
| | ) | |
| MARVIN DAVIS, | ) | Honorable |
| | ) | Marina E. Ammendola, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the judgment of the circuit court denying petitioner's petition for a plenary order of protection where the court's finding that petitioner failed to establish by a preponderance of the evidence that abuse had occurred was not against the manifest weight of the evidence.

¶ 2    This case arises following the circuit court's denial of petitioner, Khadijah Davis's, petition for a plenary order of protection under the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/101 *et seq.* (West 2020)) against her cousin, respondent, Marvin Davis. Petitioner sought the order of protection following a dispute between her and respondent outside of their shared

residence. Petitioner alleged that during the dispute, respondent yelled at her, cursed at her, and charged at her with a knife. The circuit court denied the petition following a hearing finding, *inter alia*, that this was an isolated incident and there was no likelihood of future abuse.

¶ 3 On appeal, petitioner contends that the court erred in denying her petition where she established by a preponderance of the evidence that respondent's conduct constituted abuse and harassment under the Act. Petitioner contends that the court erred in focusing on whether there had been past instances of abuse between the parties and should have found abuse occurred here because the respondent's conduct caused her emotional distress. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                                    I. BACKGROUND

¶ 5 On October 20, 2020, petitioner filed a petition for an order of protection against respondent following an altercation between the parties outside of their shared residence. In the petition, petitioner alleged that respondent "charged after her with a knife" and made threats against her. Petitioner further alleged that respondent gave his daughters petitioner's phone number so that his daughters could call her and make verbal threats to "beat" her. Respondent also threatened to have his daughter "jump on" her. Petitioner stated that this order was for "intimidation and harassment," and that she was concerned for her safety.

¶ 6 The circuit court denied the emergency nature of the petition, but continued the petition for a hearing. The court held a hearing on the petition on March 22, 2021. At the hearing, petitioner testified that in August 2020, petitioner lived with her grandmother, and respondent lived on the second floor of the same building. On August 4, 2020, respondent was served an eviction letter through the mail. Respondent started "ramping, raging, and cursing in front of the house."

Petitioner came outside and respondent asked her about the eviction letter. Petitioner told him to talk to the judge about it.

¶ 7    Respondent then charged at petitioner with a knife, and told her that she did not know who she was "messing with." Petitioner went inside the house and locked the door. Petitioner testified that she was "very afraid." Petitioner submitted into evidence video recordings of the incident recorded by her home's security system. Petitioner testified that she was "disturbed" by the situation, and she sought therapy. Petitioner testified that she was seeking a plenary order of protection because she was "scared" and "fearful." Petitioner testified that respondent did not stop yelling until their grandmother told him to stop.

¶ 8    On direct examination by the court, petitioner testified that the last time she saw respondent in person was on November 14, 2020, when he moved his belongings out of the house. Petitioner testified that respondent occasionally sent packages to the house, but she would send them back to the post office. Other than those incidents, she had no other contact with respondent outside of court appearances.

¶ 9    Respondent testified that he had been living on the second floor of his grandmother's house since 2008. Respondent acknowledged that he became upset after he received the eviction letter, and had "words" with petitioner. Respondent stated that he did not "charge" at petitioner, but walked up to her. He also denied that he brandished a knife at petitioner, but instead testified that he was holding a flashlight because he was a paramedic. Respondent told petitioner to "stop playing with" him. Respondent denied telling his daughters to call and threaten petitioner, but testified that they did so on their own when he told them about the eviction letter.

¶ 10    Respondent testified that he currently lived in Indianapolis, Indiana, and has worked as a paramedic for 20 years. Respondent testified that he had lived in his grandmother's building since

2008 and petitioner moved in 2016. Respondent testified that he called the police to the house while he was arguing with petitioner because he believed that the eviction letter was fake. While they were arguing, the parties' grandmother told respondent to go upstairs and to stop cussing. Respondent complied with his grandmother's request. Respondent testified that he went upstairs to get some clothes and then left the house. He returned about a month later with police to get the rest of his belongings. He told his grandmother that he was moving because he "couldn't deal" with living with petitioner. Respondent moved in with his mother until he could find his own house. Respondent testified that he had not been back to his grandmother's house since he moved. He testified that the packages being delivered to the house were medicine that was sent to the wrong address.

¶ 11    In denying the petition, the court noted that one of the factors it had to consider was the "nature, frequency, and pattern of conduct of the Respondent's past abuse." The court noted that the parties had lived together in the same home for four years before this incident and there had been no incidents of past abuse. The court stated that the "parties peacefully lived together for four years in the same building in separate apartments owned by the grandmother." The court observed that this dispute began over an eviction letter, which respondent believed was fake. The court stated that in reviewing the video recordings of the incidents, the court did see something in respondent's hand, but it did "not see a knife in the video." The court noted that the dispute between respondent and petitioner ended as soon as the grandmother told them to stop.

¶ 12    The court found that respondent voluntarily left the premises and has not returned except to retrieve his belongings. The court did not find credible petitioner's testimony that she lives in fear of the respondent because he no longer lives in the State of Illinois. The court therefore found

that petitioner did not carry her burden of proof on the plenary order of protection, and denied the petition. Petitioner now appeals.

¶ 13                                II. ANALYSIS

¶ 14    On appeal, petitioner contends that the court erred in denying her petition where petitioner's testimony demonstrated that she was abused by respondent. Petitioner asserts that although this was only a single incident, the incident caused petitioner emotional distress and caused her to seek therapy. Petitioner maintains that respondent's conduct represented abuse and harassment under the Act. Petitioner contends that once the trial court found that abuse had occurred, it should have granted the order of protection.

¶ 15                              A. Appellee Brief

¶ 16    We first note that respondent has not filed an appellee's brief. However, we may decide the merits of the appeal even in the absence of an appellee's where, as here, the record is simple and the claimed errors are such that this court can decide them without the aid of an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 17                        B. Plenary Order of Protection

¶ 18    Petitioner contends that the court erred in denying her petition for an order of protection where the evidence presented showed that it was "more likely than not" that she was abused by respondent. Petitioner points to her testimony regarding respondent charging at her with a knife and his verbal abuse, which caused her emotional distress. Petitioner asserts that respondent did not deny that he yelled at her and cursed at her.

¶ 19    A petitioner alleging abuse and seeking an order of protection has the burden to establish by a preponderance of the evidence that abuse has occurred. *Best v. Best*, 223 Ill. 2d 342, 348 (2006). The trial court's determination as to whether the petitioner has met her burden will not be

disturbed unless it is against the manifest weight of the evidence. *Id.* at 348-49. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Id.* at 350.

¶ 20 Here, the trial court found that petitioner failed to meet her burden because there had been no past instances of abuse and because respondent had voluntarily left their grandmother's home and had left the state. Indeed, section 214 of the Act provides that in determining whether to grant a specific remedy, the court should consider:

> "the nature, frequency, severity, pattern and consequences of the respondent's *past abuse*, neglect or exploitation of the petitioner or any family or household member, including the concealment of his or her location in order to evade service of process or notice, and the likelihood of danger of *future abuse*, neglect, or exploitation to petitioner or any member of petitioner's or respondent's family or household." (Emphasis added.) 750 ILCS 60/214(c)(1)(i) (West 2020).

The trial court's ruling shows that it expressly considered the factors in section 214, noting that the parties had lived in the same building without incident for four years, and that there was very little likelihood of future abuse because the parties had not had any contact since November 2020. The court also seemed to find it significant that the dispute ended when the parties' grandmother told respondent to stop. Based on these findings, the court found that petitioner had failed to establish by a preponderance of the evidence that abuse had occurred.

¶ 21 In her brief before this court, petitioner seems to suggest that the circuit court *did* find that respondent abused petitioner, but nonetheless chose to not issue the plenary order of protection. Petitioner contends that this was in error because the Act provides that if the court finds abuse, an order of protection "shall" issue. 750 ILCS 60/214(a) (West 2020). The record shows, however,

that the circuit court did not find abuse, and therefore was not required to enter the order of protection.

¶ 22    The Act defines abuse as "physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation ***." 750 ILCS 60/103(1) (West 2020). Petitioner asserts that she established by a preponderance of the evidence that respondent abused her because his conduct constituted harassment. The Act defines harassment as: "knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner." 750 ILCS 60/103(7) (West 2020). Petitioner contends that she showed by a preponderance of the evidence that respondent harassed her when he yelled at her, cursed at her, and charged at her with a knife. Petitioner asserts that this overt act of violence was sufficient for a finding of harassment even though it only happened once.

¶ 23    First, we observe that despite petitioner's contentions to the contrary, the circuit court did not find that respondent charged at petitioner with a knife. After viewing the video recordings of the incident that petitioner submitted into evidence, the court noted that respondent appeared to be holding something in his hand, but the court did not see a knife in the video. Respondent testified that he was holding a flashlight. We observe that the video recordings of the incident have not been included in the record filed on appeal. It is petitioner's burden, as the appellant, to present a sufficiently complete record of the proceedings at trial to support a claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). In the absence of such a record, we presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Id.* at 392. "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id.*

¶ 24 Furthermore, harassment under the Act requires that the petitioner suffer emotional distress. Petitioner asserts that she suffered emotional distress as a result of respondent's conduct and sought therapy. However, the circuit court did not find this testimony credible. The court found that it was not believable that petitioner lived in fear of respondent when respondent had moved out of the state and had not had any contact with petitioner for months. We find no basis to disturb this finding. Under the manifest weight of the evidence standard, "[a] reviewing court will not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn." *Best*, 223 Ill. 2d at 350-51. We therefore find the circuit court's determination that petitioner failed to establish abuse by a preponderance of the evidence was not against the manifest weight of the evidence. Accordingly, we find that the court did not err in denying the petition for an order of protection.

¶ 25                                    III. CONCLUSION

¶ 26 For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 27 Affirmed.